**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosanna Franchino,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-08144-PCT-GMS<br><br>**ORDER** |

At issue is the denial of Plaintiff Rosanna Franchino's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 21, "Pl. Br.") Defendant SSA Commissioner's Response Brief (Doc. 24, "Def. Br."), and Plaintiff's Reply Brief (Doc. 25, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 20, "R.") and now affirms the Administrative Law Judge's decision (Doc. 20-3 at 15–23).

**I.    BACKGROUND**

Plaintiff filed an Application for Disability Insurance benefits on August 5, 2016, for a period of disability beginning on December 31, 2013. (R. at 14.) Her claim was denied initially on March 2, 2017, and upon reconsideration on July 11, 2017. (R. at 14.) Plaintiff appeared before the ALJ for a video hearing regarding her claim on May 1, 2019, which

the ALJ denied on May 29, 2019. (R. at 14, 22.) On May 18, 2020, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 2–4.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: fibromyalgia, osteoarthritis, and high blood pressure. (R. at 16.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 21.) The ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 17.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] had the [RFC] to occasionally lift or carry 20 pounds; frequently lift and carry 10 pounds, including upward pulling (with pushing and pulling the same as with lifting and carrying); sit for 6 hours in an eight[-]hour day; stand or walk for 6 hours in an eight-hour day; frequently use ramps and stairs; occasionally use ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, and crouch; and occasionally crawl. [Plaintiff] must avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, hazards, or heights.

(R. at 17.) Accordingly, the ALJ found that Plaintiff can perform past relevant work as a shipping receiving supervisor. (R. at 20.)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the

record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**III.   ANAYSIS**

Plaintiff raises three issues for the Court's consideration. First, Plaintiff argues the ALJ erred in providing no analysis of whether Plaintiff's sleep apnea is a severe impairment at step two. (Pl. Br. at 15–16.) Second, Plaintiff argues the ALJ erred in assigning little weight to treating physician, Dr. Justin Garrison's medical opinion. (Pl. Br.

at 16–19.) Finally, Plaintiff contends the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 19–21.)

The ALJ erred in not providing any discussion of Plaintiff's sleep apnea at step two, but the error was harmless. Second, the ALJ provided specific and legitimate reasons for assigning little weight to Dr. Garrison's medical opinion. Finally, the ALJ appropriately relied on objective medical evidence in the record as well as Plaintiff's activities of daily living in rejecting Plaintiff's symptom testimony Since the ALJ's failure to discuss Plaintiff's sleep apnea at step two was harmless error, the Court affirms the decision of the ALJ.

### A. The ALJ erred in not providing information as to whether Plaintiff's sleep apnea is a severe impairment at step two.

The Ninth Circuit Court of Appeals interprets the severity requirement as a "*de minimis* screening device" designed to weed out groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is not severe if it does not significantly limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'" *Smolen*, 80 F.3d at 1273 (citing 20 C.F.R. § 404.1520(b) (2014)). Only if the evidence establishes a "slight abnormality that has no more than a minimal effect on an individual's ability to work" should the ALJ end the inquiry at step two. SSR 85-28; *Smolen*, 80 F.3d at 1290. An ALJ's decision to do so shall be affirmed only where it is "clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Plaintiff argues the ALJ failed to address Plaintiff's "sleep apnea, ignored evidence of sleep apnea, and failed to consider how the combination of sleep apnea and Rosanna's other impairments affected her ability to do basic work activities." (Pl. Br. at 15.) Plaintiff argues that because the ALJ did not address Plaintiff's sleep apnea whatsoever, the rationale must be guessed. (Pl. Br. at 15–16.)

Because step two was ultimately resolved in Plaintiff's favor, the ALJ's failure to address sleep apnea at step two was harmless error. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). When an ALJ erroneously fails to designate an impairment as severe but nevertheless resolves step two in the claimant's favor, prejudice results only if the ALJ subsequently fails to consider the impairment at all in subsequent steps. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (superseded by regulation on other grounds). This is because step two is a screening tool; it "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck*, 869 F.3d at 1048–49. "In fact, 'in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (quoting Titles II & VXI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). Here, the record indicates the ALJ did consider Plaintiff's sleep apnea in assessing her RFC. The state agency physicians—to whose opinions the ALJ assigned great weight in assessing RFC—cited to records of Plaintiff's sleep apnea and did not find Plaintiff's sleep apnea to be a severe or non-severe medically determinable impairment. (Def. Br. at 21; R. at 17, 73–80, 94–100.) Further, Plaintiff has not identified any "limitations stemming from" her sleep apnea that "the ALJ did not include in the sequential analysis." *Davis v. Berryhill*, 743 F. App'x 846, 849 (9th Cir. 2018). Therefore, while the ALJ may have erred in not addressing sleep apnea at step two, any error was harmless.

**B.    The ALJ did not err in assigning little weight to Dr. Garrison's medical opinion.**

Plaintiff argues the ALJ erred in assigning little weight to the opinions of Dr. Garrison. (Pl. Br. at 16–19.) While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*,

81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ assigned little weight to Dr. Garrison's April 2019 opinion. (R. at 19.) Dr. Garrison opined that Plaintiff could not perform full-time sedentary work. (R. at 19, 1116–22.) The ALJ found that Dr. Garrison's opinion was inconsistent with the clinical records and with Plaintiff's activities of daily living. (R. at 19.) The ALJ described that Dr. Garrison found Plaintiff could only sit for fifteen minutes at a time within two hours of an eight-hour workday, but Plaintiff also described that she was able to go on long distance trips. (R. at 19, 543, 950, 1124, 1006.) Dr. Garrison also attributed some of Plaintiff's limitations to Plaintiff's use of an assistive device, but Plaintiff was not prescribed an assistive device until after the date last insured, and she did not use an assistive device before then. (R. at 19, 952, 1118–20.) Additionally, the ALJ points out that Dr. Garrison relies on evidence of radiculopathy for his findings, but there was no such evidence. (R. at 19, 1178.) The ALJ further notes that Dr. Garrison's April 2019 opinion was made after Plaintiff's date last insured. (R. at 19, 952.)

The ALJ also assigned little weight to Dr. Garrison's November 2018 and April 2019 letters. (R. at 19–20, 950, 1124.) The ALJ again described that Dr. Garrison's opinions were inconsistent with the clinical record and Plaintiff's activities of daily living. (R. at 19.) The ALJ mentioned again that Plaintiff went on multiple long-distance trips, which conflicts with Dr. Garrison's sitting limitation. (R. at 19, 543, 1006.) The ALJ also describes that the evidence does not support Plaintiff's pain allegations because Plaintiff was frequently described as being alert, active, oriented, and in no acute distress. (R. at 19–20.)

Plaintiff argues that though she did not get prescribed use of an assistive device until after her date last insured, the record consistently shows she had antalgic gait. (Pl. Br. at 18; R. at 1029, 1034, 1044, 1054, 1087, 1093, 1128.) The record also consistently showed that Plaintiff had normal and steady gait and station (R. at 336, 339, 341, 386, 396, 399, 402, 408, 411, 414, 418, 425, 479, 484, 489, 651, 658, 788, 915.) And Dr. Garrison opined Plaintiff could not ambulate without a wheelchair, walker, or cane but Plaintiff denied using an assistive device. (R. at 241, 252, 1120.) Ultimately, because the ALJ's interpretation of the medical evidence is a reasonable one supported by substantial evidence (a highly deferential standard of review) the Court defers to the ALJ's conclusion. *See Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004) (declaring that when competing rational inferences can be drawn from the record, the ALJ's decision should be upheld). There is evidence of Plaintiff having an antalgic gait, but there is also overwhelming evidence of Plaintiff having a normal and steady gait.

Plaintiff argues the ALJ inaccurately indicates that she was alert, oriented, and in no acute distress, and the ALJ does not make clear how these findings are related to Dr. Garrison's medical opinions. (Pl. Br. at 18–19.) Plaintiff indicates the record shows she appeared ill and had abnormal physical exams. (Pl. Br. at 18; R. at 1029, 1033–34, 1038–39, 1044, 1049, 1053–54, 1093.) The records Plaintiff cites do note that she appeared ill, but they also show Plaintiff had mostly normal examinations. (R. at 1029, 1033–34, 1038–

39, 1044, 1049, 1053–54, 1093.) Additionally, Plaintiff was consistently described as alert, active, oriented, and in no acute distress at medical examinations. (R. at 18, 335, 338, 385, 391, 396, 399, 408, 411, 413, 417, 424, 468, 474, 479, 484, 489, 493–94, 657, 755–56, 787, 793, 876, 882, 888, 915, 1018, 1062, 1128.) The ALJ found this was inconsistent with Plaintiff's allegations of pain and with Dr. Garrison's clinical record that Plaintiff could not sustain work. (R. at 19–20.) The record consistently shows Plaintiff was alert, oriented, and in no acute distress, which contradicts Dr. Garrison's opinion.

Finally, Plaintiff argues that her trips to California do not amount to a sufficient reason to assign little weight to Dr. Garrison's opinions because there is no level of detail in the record indicating if Plaintiff took breaks on her trips, how long the trips were, if she sat upright, or if she was able to get up and walk around during trips. (Pl. Br. at 17.) The ALJ found that long trips were inconsistent with Dr. Garrison's findings that Plaintiff could only sit for 15 minutes at a time. (R. at 19, 543, 950, 1006, 1124.) Plaintiff also argues the ALJ mistakenly concludes that her radiculopathy does not exist, but the record shows a 2017 nerve conduction and EMGs showed normal results. (Pl. Br. at 18; R. at 1105, 1178, 1244.) Even if there were no details about Plaintiff's trips and even if there is evidence of radiculopathy, the ALJ provided other specific and legitimate reasons for assigning little weight to Dr. Garrison's opinion. The Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence for assigning little weight to Dr. Garrison's opinion.

### C. The ALJ provided sufficient clear, and convincing reasons for rejecting Plaintiff's symptom testimony.

Plaintiff argues the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 19–21.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). If the claimant presents such evidence then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680. Nevertheless, a lack of medical evidence to fully corroborate the alleged severity of pain, is not the same as the existence of medical evidence that is inconsistent with the severity of the pain or the condition alleged, nor is it the same as a failure to seek treatment consistent with the level of pain or condition alleged. *Id.* at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination.").

Here, the ALJ found "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the alleged intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained throughout this decision." (R. at 18.)

First, the ALJ described how Plaintiff alleged disabling pain and fibromyalgia "fog," but Plaintiff was consistently described as alert, active, oriented, and in no acute distress and medical examinations. (R. at 18, 335, 338, 385, 391, 396, 399, 408, 411, 413, 417, 424, 468, 474, 479, 484, 489, 493–94, 657, 755–56, 787, 793, 876, 882, 888, 915, 1018, 1062, 1128.) The ALJ also noted that Plaintiff alleged she had swelling in her hands, but treatment providers did not observe swelling in Plaintiff's extremities. (R. at 18, 391, 418, 494, 658, 793, 915, 1062, 1128, 1172, 1179.) Additionally, the ALJ noted that Plaintiff alleged numbness in her hands and feet but the record shows she consistently had intact sensation. (R. at 18, 336, 339, 341, 386, 396, 399, 402, 408, 411, 414, 418, 425, 479, 484,

494, 658, 756, 788, 876, 882, 888, 892.) And even though Plaintiff alleged radiculopathy and numbness in her lower extremities, a 2017 nerve conduction and EMGs showed normal results. (R. at 18, 1178.) The ALJ also described that Plaintiff alleged she was limited in standing and walking, but that she was often observed with a normal, steady gait and station. (R. at 18, 334, 339, 341, 386, 396, 399, 402, 408, 411, 414, 418, 425, 479, 484, 489, 651, 658, 788, 915.) Though Plaintiff was recently prescribed a cane, it was after the date last insured. (R. at 18, 952.) The ALJ also pointed out that Plaintiff has not undergone surgery for her musculoskeletal issues. (R. at 18.)

The ALJ also specifically described Plaintiff's allegations for mental health. (R. at 19.) Plaintiff received mental health treatment and never reported requiring inpatient care. (R. at 19, 466.) Plaintiff indicated she had memory problems, but her providers indicated her memory was normal for her age. (R. at 19, 235, 240, 335, 338, 341, 385, 391, 396, 399, 402, 411, 413, 417, 424, 474, 479, 484, 489, 493, 509, 756, 760, 772, 787, 793, 876, 882, 888, 892, 984, 988, 1009, 1029, 1034, 1039, 1044, 1049, 1054, 1087, 1093, 1129, 1143, 1148, 1153, 1158, 1163, 1179.) Treatment providers also noted Plaintiff had good or normal concentration, though she alleged she could not concentrate. (R. at 19, 235, 240, 527, 532, 538, 544, 549, 555, 762, 772, 984, 988, 1009, 1128.) At a consultative examination Plaintiff had a perfect score on a Mini Mental Status Examination. (R. at 19, 468–69.) The ALJ also noted that Plaintiff told a consultative examiner that she could maintain social relationships and the record shows Plaintiff was calm, cooperative, and pleasant. (R. at 19, 373, 467, 509, 527, 853, 955, 959, 1014, 1128.)

Plaintiff contends that the ALJ's summary of Plaintiff's medical evidence is inadequate and vague. (Pl. Br. at 21.) She indicates that the ALJ makes "broad and sweeping findings" about Plaintiff's disabling complaints of the limitations in her hands, feet, gait, and use of an assistive device. (Pl. Br. at 21; R. at 18.) Plaintiff notes that the ALJ broadly cites many documents in the records, some of which contain hundreds of pages, making it impossible to determine the basis for the ALJ's findings. (Pl. Br. at 21; R. at 18.) Though the ALJ cites to hundreds of pages of documents in the records, the records

do support the ALJ's findings. The ALJ did not err in relying on Plaintiff's medical evidence as a reason for discounting Plaintiff's symptom testimony.

The ALJ also found that Plaintiff's activities of daily living were not as limited as one would expect given Plaintiff's claims of disabling symptoms and limitations. (R. at 18.) The ALJ described that Plaintiff alleged debilitating pain, fatigue, and an inability to sit for longer than fifteen to thirty minutes, but she went on multiple long-distance trips. (R. at 18, 217–18, 235–43.) Specifically, in January 2017, Plaintiff described a recent trip to California to visit family and said the trip went "well for her." (R. at 18, 543.) Plaintiff also discussed her upcoming "vacations and visits with family" to a treatment provider. (R. at 18, 1004, 1006.) In July 2018, Plaintiff went on a trip to pick up and take home her grandchildren. (R. at 18, 1006.) The ALJ also described that Plaintiff indicated she exercised occasionally, even though she alleged constant, disabling pain. (R. at 18–19, 333, 385, 391, 396, 398, 650, 657, 784.)

### D.   The credit-as-true rule does not apply.

Plaintiff asks the Court to apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 21–23.)  The credit-as-true rule only applies in cases where three elements are present. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100.  Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.*  Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

However, remand is not warranted because the ALJ's only error was harmless. The ALJ's order is affirmed because the ALJ properly considered Plaintiff's sleep apnea in assessing her RFC.

**IT IS THEREFORE ORDERED** affirming the May 29, 2019 decision of the Administrative Law Judge (R. at 14–22).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order.

Dated this 2nd day of December, 2021.

_____
G. Murray Snow
Chief United States District Judge